UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE PHONE LITIGATION | Case No.: 10-CV-01177-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**(Re: Docket No. 113)** |

Pending before the court is Defendant Google Inc.'s ("Google") and Defendant HTC Corp.'s ("HTC") motion to dismiss Plaintiff Mary McKinney's ("McKinney") and Plaintiff Nathan Nabors' ("Nabors") Consolidated Amended Complaint ("CAC"). The court previously found it appropriate to take the motion under submission without oral argument. See Civil L.R. 7-1(b). Based on the papers submitted, the court GRANTS Defendants' motion to dismiss with leave to amend.

## I. BACKGROUND

On September 30, 2011, Plaintiffs brought a class action against Defendants on behalf of themselves and a class of all consumers (the "Class") who purchased the Nexus One mobile device (the "Google Phone") manufactured and marketed by Google and HTC, alleging the failure of the Google Phone to maintain connectivity to a wireless network. CAC ¶ 1, Docket No. 110.

The Google Phone was an advanced mobile cellular phone that operated using the Android Mobile Technology Platform and included various features, such as a video and audio player, and an Internet device which provided email and Internet access on the 3G network. Id. ¶ 23. The "3G" technology features faster peak data transfer rates over previous networks of up to 7.2 megabytes per second, which, according to Plaintiffs, is especially important to "smart phone" users who employ their devices to run and store applications, send and receive email, download and play media, and share pictures and information via social networking systems. Id. ¶ 36.

Google is a Delaware corporation that develops, brands, promotes, markets, distributes and/or sells the Google Phone throughout the United States. Id. ¶ 18. HTC is a Taiwanese corporation that designed and manufactured the Google Phone. Id. ¶ 19. Non-Defendant T-Mobile, a third party that served as Plaintiffs' wireless carrier, is an American subsidiary of Germany-based Deutsche Telekom, and provides wireless voice and data communications services to subscribers in the U.S. Id. ¶ 20.

McKinney, a Pennsylvania resident, purchased her Google Phone on or about January 9, 2010, through the Google website. Id. ¶ 6. Specifically, McKinney alleges that 3G service on her phone is "sporadic and inconsistent." Id. ¶ 478. McKinney further alleges that a T-Mobile sales representative explicitly told her that the Google Phone had 3G speed, and that the phone was "essential for web surfing and email." Id. ¶ 33.

Nabors, a Florida resident, purchased his Google Phone through the Google website, google.com/phone. Id. ¶ 14. Nabors alleges he missed numerous calls, experienced a high volume of "dropped" calls and the Google phone did not function properly. Id. ¶ 61.

Plaintiffs contend that Google made representations regarding the Google Phone's capabilities to the public through multiple points of contact, including internet, print, television and radio advertising. Id. ¶ 30. According to Plaintiffs, this included the information Defendants presented to Plaintiffs and the Class on the website Google set up to sell its phone Id. However, also according to Plaintiffs, Google's promotional materials have been removed from that address and HTC has allegedly done the same. Id. ¶ 31.

Plaintiffs contend that these alleged representations by T-Mobile and Google consistently presented the Google Phone as a true "3G" device that would offer superior upload and download speeds, and a device that would be worth the premium Plaintiffs and the Class would pay both for their devices, and the more expensive service plans that would be needed to support their devices. Id. ¶ 34.

Plaintiffs also contend that Defendants consistently advertised the Google Phone, working in tandem with a mobile network, as providing 3G transfer rates. Id. ¶ 43. If, however, 3G connectivity was unavailable, the phone and data operations could still be used, but at what Plaintiffs believed to be a "substantially lower" data transfer rate than the 3G level that was allegedly advertised. Id. ¶ 46. Plaintiffs claim that, contrary to Defendants' assertions, Plaintiffs and other members of the Class experience connectivity on the 3G wireless network only a fraction of the time they are connected to the T-Mobile 3G wireless network, or receive no 3G connectivity at all for a significant portion of the time. Id. ¶ 47. Further, according to Plaintiffs, the alleged lack of 3G connectivity caused Plaintiffs and other members of the Class to experience a significant number of dropped calls when the Google Phone cannot locate an available 3G network connection. Id. Finally, Plaintiffs allege Defendants failed to warn Plaintiffs and Class members of the limitations associated with using the Google Phone to its internal understanding that the T-Mobile 3G network was not designed to provide consistent connectivity to its 3G network for Google Phone users. Id. ¶ 52.

As a result, Plaintiffs contend that they were injured in response to representations, advertising or other promotional materials that were prepared and approved by Defendants and disseminated on the face of the product or through assertions that contained the representations regarding the Google Phone. Id. ¶ 65. Had the true facts been disclosed, Plaintiffs claim they would not have purchased the Google Phone at the prices and under the terms and conditions to which they were and are subjected. Id.

On August 31, 2010, Nabors filed an action in this court, Case No. 10-3897. See Class Action Compl., Case No. 10-3897, Docket No. 1. On January 10, 2011, Nabors filed his First Amended Complaint. See Am. Compl., Case No. 10-3897, Docket No. 21. On August 30, 2011, the court

granted Defendants' motion to dismiss Nabors' First Amended Complaint. See Order, Case No. 10-3897, Docket No. 48.

On January 29, 2010, McKinney filed an action in state court. See Notice of Removal, Docket No. 1, ¶ 1. On March 22, 2010, Defendants removed that action to this court, Case No. 10-1177. See Notice of Removal. On June 11, 2010, McKinney filed her First Amended Complaint. See First Am. Compl., Docket No. 26. On November 16, 2010, Judge Ware granted Google and HTC's motion to dismiss McKinney's First Amended Complaint. See Order, Docket No. 73. On December 3, 2010, McKinney filed her Second Amended Complaint. See Second Am. Compl., Docket No. 75. On August 30, 2011, this court granted Defendants' motion to dismiss McKinney's Second Amended Complaint. See Order, Docket No. 106.

On September 15, 2011, the court consolidated Nabors' and McKinney's cases. See Order, Docket No. 108. On September 30, 2011, Plaintiffs filed the CAC alleging three causes of action: (1) Breach of Implied Warranty; (2) Violation of Consumers Legal Remedies Act, California Civil Code § 1760, et seq.; and (3) Unlawful and Unfair Business Practices in Violation of California Business & Professions Code § 17200, et seq. See CAC.

## II. LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Center, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

On a motion to dismiss, the court's review is limited to the face of the complaint and matters judicially noticeable. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); N. Star

4
Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the court also may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading. In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

### III. DISCUSSION

**A. Breach of Implied Warranty of Merchantability**

Defendants contend that Plaintiffs' implied warranty of merchantability claim should be dismissed on the grounds that: (1) The claim remains preempted under the Federal Communication Act ("FCA"); (2) Plaintiffs fail to plead facts showing the Nexus One is not merchantable and unfit for its ordinary purpose; (3) Defendant's lawful disclaimer of any implied warranty of merchantability defeats the claim; and (4) Plaintiffs lack privity with HTC.

**1. Preemption**

Defendants argue that Plaintiffs' claims are preempted because they are inextricably tied to preempted attacks on the sufficiency of T-Mobile's 3G wireless network infrastructure, and that Plaintiffs fail to identify any actual defects in the Nexus One.

The state law warranty claims in McKinney's First and Second Amended Complaints were dismissed because the court found that the claims were preempted by the FCA, which provides that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(3)(A). A complaint that service quality is poor is really an attack on the rates charged for the service. Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 988 (7th Cir. 2000). In dismissing McKinney's earlier complaints, the court determined that her warranty claims—that Defendants knew T-Mobile's 3G network was not sufficiently developed, deceived McKinney into paying higher prices for a service that Defendants could not deliver, and acted in concert with T-Mobile—were attacks on T-Mobile's rates and market entry. The court granted McKinney leave to amend because

it determined she may be able to state claims against Google and HTC for actual defects of the Google Phone or its applications.

Specifically, in dismissing McKinney's Second Amended Complaint, the court found that,

> "McKinney claims that the ordinary purpose of the phone is to provide consistent connectivity to a supposedly faster 3G network, the phone fails to do so, and '[w]hether the problem is with the Google Phone itself or with [the] wireless carrier's network, or a combination of the two, is irrelevant.' McKinney also alleges that 'the combination of the phone and/or the network made it difficult . . . to receive reliable and sustained connectivity on the 3G wireless network,' that 'T-Mobile's network did not provide consistent 3G performance for Google Phone purchasers,' and that 'T-Mobile's 3G network was not designed to provide consistent connectivity to its 3G network for Google Phone users.'"

Order Granting Mot. Dismiss at 5:3-10 (internal citations omitted).

In the CAC, Plaintiffs again allege that "the combination of the phone and/or the network made it difficult . . . to receive reliable and sustained connectivity on the 3G wireless network as compared to a slower network," "T-Mobile's network did not provide consistent 3G performance for Google Phone purchasers," the "T-Mobile 3G network was not designed to provide consistent connectivity to its 3G network for Google Phone users," and that T-Mobile's 3G network is "inferior." CAC ¶¶ 58, 51, 52, 63. Any claims about the service quality of T-Mobile's 3G networks are, again, preempted.

The CAC, however, also alleges that "the Google Phone itself suffered from defective hardware and/or software" and "the Google Phone was sold with actual defects." Id. ¶¶ 64, 88. Accepting the allegations as true and viewing them in the light most favorable to Plaintiffs, as the court must on a motion to dismiss, Plaintiffs have pleaded that that phone's failure to connect to the 3G network was a result of defects with the phone itself. Accordingly, Plaintiffs' claim for breach of implied warranty is not preempted.

**2. Ordinary Purpose**

Additionally, Defendants argue that Plaintiffs' allegations about the Google Phone's failure to maintain consistent 3G connectivity does not support a claim for breach of implied warranty.

Cal. Civ. Code § 1792 provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods be merchantable." Goods in conformity with the implied warranty of merchantability: "(1)

6

Pass without objection in the trade under the contract description[;] (2) Are fit for the ordinary purposes for which such goods are used[;] (3) Are adequately contained, packaged, and labeled[;] and (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a).

The implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1296 (1995). Rather, the implied warranty of merchantability guarantees that a product has only "a minimum level of quality" and is free of a defect that is "so basic that it renders the [product] unfit for its ordinary purpose." Id. at 1295-96; see also Tietsworth v. Sears, Roebuck & Co., 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose.") (internal citation omitted).

Here, Plaintiffs allege that they "purchased Google Phones for the phone's ordinary and intended purpose of calling, receiving and sustaining telephone calls on the phone and to use the Android Mobile Technology Platform's features, which were represented by Defendants as accessible, or optimal, using the 3G network." CAC ¶ 84. Plaintiffs further allege that "[t]he Google Phone cannot perform its ordinary and represented purpose because it does not provide consistent connection to a 3G wireless network" and "Plaintiffs experienced a number of missed and dropped phone calls." Id. ¶¶ 86-87.

Although Plaintiffs allege that the Google Phone provides inconsistent 3G connectivity, they also allege that the Google Phone's phone and data functions operate when 3G connectivity is unavailable and the device switches to a 2G network. Id. ¶¶ 46, 57. Thus, allegations that the 3G connectivity is inconsistent are insufficient to support a claim that the phone fails to call, receive, and sustain telephone calls. Furthermore, Plaintiffs' allegations that the phone drops or misses calls are insufficient to demonstrate that this alleged defect is more than inconvenience or that the Plaintiffs cannot re-initiate these calls such that the phone is unfit for its ordinary purpose. See Baltazar v. Apple, Inc., No. CV–10–3231–JF, 2011 WL 3795013, at *3 (N.D. Cal. Aug. 26, 2011)

7
Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

(inconvenience insufficient); Tietsworth, 720 F. Supp. 2d at 1142-43 (inconvenience in having to "restart" allegedly defective washing machine does not support claim for breach of the implied warranty of merchantability).

Plaintiffs, however, argue that the heart of this case is that the Google Phone does not work at all. The CAC alleges that "McKinney never had 3G service on her first Google Phone, and has had 3G service on later Google Phones that can best be described as sporadic and inconsistent. These defects caused McKinney to be unable to use her phone for any purpose for a significant portion of the time she has owned the Google Phone." CAC ¶ 48.

> "[McKinney's Google Phone] never had 3G service at any point, and showed an error message regarding the phone's hardware that directed her to contact her mobile service provider. . . . *McKinney was unable to obtain phone service or use any of the features of the Google Phone* during this time . . . ."

Id. ¶ 8 (emphasis added).

Thus, McKinney has alleged that her Google Phone had fundamental defects that made it unfit for its ordinary purpose of calling, receiving and sustaining telephone calls on the phone and using the Android Mobile Technology Platform's features. Although this allegation does not demonstrate that inconsistent 3G connectivity makes all Google Phones unmerchantable, it does demonstrate that for a period of time, McKinney's phone was unmerchantable because it was unable to obtain phone service or use any of the features of the Google Phone.

### 3. Disclaimer of Implied Warranty

Defendants also argue that Plaintiffs' implied warranty claim fails as a matter of law due to Google's disclaimer in the Terms of Sale for the Google Phone of any implied warranty of merchantability. See Request for Judicial Notice ("RJN") Ex. 1, Docket No. 115-1. Plaintiffs argue that (1) the court should not consider the Google Phone Terms of Sale in this motion to dismiss; (2) the disclaimer in the Terms of Sale is not conspicuous[1]; (3) Defendants provide no evidence that the Terms of Sale were presented prior to Plaintiffs' purchase; and (4) there is no indication that

---

[1] Plaintiffs also assert that the disclaimer is unconscionable but provide no argument regarding unconscionability.

8
Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

the HTC Limited Warranty was made available to Plaintiffs. The court addresses each of these arguments in order.

First, in determining a motion to dismiss, the court may consider documents attached to the complaint, as well as documents to which the complaint specifically refers and whose authenticity is not questioned, even if they are not physically attached to the complaint. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment.") (internal citations and quotation marks omitted), overruled on other grounds as recognized in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002); Inlandboatmens Union of the Pac. v. Dutra Group, 279 F.3d 1075, 1083 (9th Cir. 2002).

Here, the Google Phone Terms of Sale are not attached to the CAC, but the CAC alleges that Plaintiffs "entered into agreements with Google . . . in connection with the purchase of [the] phones." CAC ¶ 85. On June 29, 2010, McKinney attached the Google Phone Terms of Sale to her original state-court complaint and alleged that it was the "Terms of the Sale agreement between Google Phone customers, including Plaintiff." See Pl.'s Class Action Complaint ¶ 11, Ex. A, Docket No. 2-1.

Plaintiffs do not dispute that Google's Terms of Sale is an agreement they made with Google in connection with the Google Phone. Plaintiffs, however, argue that Google provided "no indisputable evidence that the Terms of Sale attached to Plaintiff McKinney's original complaint is the Terms of Sale Google attaches to its Request for Judicial Notice." Opp'n at 3. A comparison of the two documents, however, confirms that the Terms of Sale attached to Defendants' Request for Judicial Notice is the same as the Terms of Sale in the court's docket. Thus, there is no dispute as to the authenticity of Google's Terms of Sale, and the document can properly be considered in conjunction with Defendants' motion to dismiss.[2] See Long v. Hewlett-Packard, No. C 06-02816

---

[2] Defendants request judicial notice of Google's Terms of Sale and HTC's End User License Agreement. See Docket No. 115. Because the court finds that Google's Terms of Sale is

9
Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

JW, 2007 WL 2994812, at *6 n.3 (N.D. Cal. Jul. 27, 2007) (finding that although Plaintiffs did not attach the warranty to the complaint, it was repeatedly referenced throughout the pleading, and therefore the court considered it in its analysis of the motion to dismiss).

Second, Plaintiffs argue that the disclaimer in the Terms of Sale is not conspicuous. Under California Commercial Code § 2316(2), an implied warranty of merchantability may be excluded in a written document in which the disclaimer is conspicuous and mentions merchantability. "Whether a provision is conspicuous is a question for the court." Inter-Mark USA v. Intuit, No. C-07-04178 JCS, 2008 WL 552482, at *8 (N.D. Cal. Feb. 27, 2008). The California Commercial Code provides the following definition of "conspicuous":

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Cal. Comm. Code § 1201(10). In making the determination as to whether a provision is conspicuous, the court must "review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties." Medimatch, Inc. v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 860 (N.D. Cal. 2000) (citing Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc., 890 F.2d 108, 115 (9th Cir. 1989).

Here, the heading at issue reads, "Warranties; Disclaimer of Warranties," while the warranty itself reads, in relevant part:

> "OTHER THAN THE ABOVE AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GOOGLE EXPRESSELY DISCLAIMS ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, REGARDING ANY DEVICES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGMENT."

---

incorporated by reference in the CAC, and the court grants Defendants' motion without relying on the HTC End User License Agreement, the court need not address the request for judicial notice.

RJN Ex. 1 at 4-5. The heading is in boldface type and larger than the surrounding text, which is not bolded, and the disclaimer is in all capital letters while the surrounding texts is in lower case font of the same size and specifically mentions "merchantability." The disclaimer is located at the bottom of page four and continues at the top of page five within the six-page document. Only two other provisions within the Terms of Sale are bolded, therefore making the disclaimer of warranties stand out visually.

 Plaintiffs argue that the disclaimer is not conspicuous because it is in the middle of a paragraph on the fourth page of a six-page document. In light of the contrasting type, size, and font of the heading and the body text of the disclaimer, however, a reasonable person purchasing the Google Phone ought to have noticed it. See Inter-Mark, 2008 WL 552482, at *8-9 (holding a disclaimer conspicuous and enforceable that was located on the fourth and fifth pages of a ten-page contract and "[o]nly two other provisions in the contract [were] in all capital letters and therefore, the disclaimer st[ood] out visually"). Thus, the disclaimer is conspicuous and complies with Section 2316.

Third, Plaintiffs argue that there is no evidence that the Terms of Sale were presented to Plaintiffs prior to purchasing their phones, if at all. As discussed above, McKinney attached these Terms of Sale to her original state-court complaint and alleged that it was the agreement between Google and Plaintiffs. See Pl.'s Class Action Complaint ¶ 11, Ex. A, Docket No. 2-1. Additionally, there are no allegations in the CAC stating that this agreement, and the disclaimer it contains, is unenforceable.

Finally, Plaintiffs argue that there is no indication that the HTC Limited Warranty was made available to them, but Plaintiffs have not demonstrated that Defendants' argument regarding Google's disclaimer in Google's Terms of Sale depends on whether Plaintiffs received the HTC Limited Warranty.

Defendants' motion to dismiss the breach of implied warranty claim therefore is GRANTED with leave to amend.

**4. Privity with HTC**

Lastly, Defendants argue that Plaintiffs' claim fails due to lack of privity with HTC because

vertical privity is a prerequisite to recovery in the State of California.

Under California law, a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant. Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Osborne v. Subaru of Am. Inc., 198 Cal. App. 3d 646, 656 n. 6 (1988). Thus, an end consumer who buys from a retailer is not in privity with a manufacturer. Id.

Courts, however, have recognized an exception to the privity requirement—when a plaintiff pleads that he or she is a third party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach. See In re Totoya Motor Corp., 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2005). California has codified third party beneficiary liability as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary 'must plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was a beneficiary.'" Schauer v. Mandarin Gems of California, Inc., 125 Cal. App. 4th 949, 957 (2005).

Here, the CAC does not allege any contract involving HTC that would give rise to the implied warranty of merchantability. The CAC only alleges that the Google Phone was "[d]eveloped in partnership with hardware manufacturer HTC." CAC ¶ 25. Because the CAC fails to plead the existence of a contract involving HTC for which Plaintiffs are third party beneficiaries, Plaintiffs have failed to plead an exception to the vertical privity requirement to bring a claim for breach of implied warranty against HTC. See In re NVIDIA GPU Litig., No. C 08–04312 JW, 2009 WL 4020104, *6-7 (N.D. Cal. Nov. 19, 2009).

Thus, Defendants' motion to dismiss Plaintiffs' breach of implied warranty claim against HTC is GRANTED with leave to amend.

**B. CLRA and UCL Claims**

**1. Rule 9(b) Pleading Standard**

As a threshold matter, the parties disagree with respect to whether Plaintiffs' UCL and CLRA

claims are subject to the heightened pleading requirements of Rule 9(b). "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL" where such claims are based on a fraudulent course of conduct. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citing Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1102–05 (9th Cir. 2003)). Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard. Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b). Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." Kearns, 567 F.3d at 1124 (internal citations and quotation marks omitted).

Although Plaintiffs argue that their CLRA and UCL allegations do not rely upon allegations of fraudulent conduct, it appears that the CLRA claims and some of the UCL claims are dependent upon allegations that Defendants made misrepresentations, failed to disclose material facts, and concealed known information regarding the allegedly defective Google Phone. See Tietsworth, No. 5:09–CV–00288 JF (HRL), 2009 WL 3320486, at *6 (N.D. Cal. Oct. 13, 2009) (citing Kearns, 567 F.3d at 1126). The CAC also alleges that "Defendants planned and participated in and furthered a common scheme by means of manufacturing, marketing and selling the Google Phone for access to T-Mobile's 3G network, despite Google Phone's inability to maintain connectivity to the 3G network." CAC ¶ 21. Thus, to the extent Plaintiffs' CRLA and UCL claims are predicated on misrepresentations and omissions they aver fraud and those claims are subject to the heightened pleading requirements of Rule 9(b). See Kearns, 567 F.3d at 1124; Vess, 317 F.3d at 1103–04.

**2. CLRA Claim**

Plaintiffs claim that Google and HTC violated several subsections of Cal. Civ. Code § 1770(a) by making false representations or advertisements. The court dismissed McKinney's Second Amended Complaint partly because:

> "McKinney has not pled with specificity the content of the alleged misrepresentations made by Defendants in their commercials and advertisements, either with respect to 3G connectivity or customer service, nor has she alleged facts sufficient to show that she

13
Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

> relied justifiably on those misrepresentations. See Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003).
>
> Furthermore, "[a]lthough a claim may be stated under CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Daugherty v. American Honda Motor Co. Inc., 144 Cal. App. 4th 824, 835 (Ct. App. 2006). Here, McKinney does not identify any affirmative representation concerning the subject of any alleged omissions, nor does she identify any legal obligation on the part of Google or HTC to disclose the material information it allegedly failed to disclose."

Order Granting Mot. Dismiss at 8-9, Docket No. 106.

The CLRA claim in the CAC includes more detail regarding the misrepresentations than McKinney's Second Amended Complaint. The CAC alleges that Defendants knowingly and falsely represented the Google Phone as able to consistently sustain telephone calls, that its Android operating platform would work properly, that it could maintain connectivity to a 3G network, and that the Google Phone could perform at a faster speed. CAC ¶¶ 99(a), (b). The CAC also alleges that Defendants advertised the Google Phone with the intent not to sell it as advertised because Defendants knew or should have known that the phone could not operate at 3G speed or maintain a 3G connection. Id. ¶ 99(c).

Again, however, Plaintiffs fail to allege the particular circumstances surrounding these representations. Nowhere in the CAC do Plaintiffs specify what the advertisements or other sales material actually stated. Nor do Plaintiffs specify when they were exposed to the statements, which ones they found material, or which ones they relied upon in making their decisions to buy a Google Phone. See Kearns, 567 F.3d at 1126. Because Plaintiffs do not identify specific statements made by either Defendant, the CAC fails to give Defendants the opportunity to respond to the alleged misconduct and to give the court the ability to assess whether the statements are actionable or non-actionable puffery. Accordingly, the CAC fails to sufficiently state a claim under the CLRA.

For the same reasons the court previously dismissed McKinney's Second Amended Complaint, Defendants' motion to dismiss the CLRA claim in the CAC is GRANTED.

It is not yet apparent to the court that Plaintiffs' complaint cannot be saved by amendment. Thus, the court grants Plaintiffs leave to amend.

**2. UCL Claim**

The UCL prohibits acts of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Defendants' conduct violated all three prongs—fraudulent, unlawful, and unfair—of the UCL.

To state a claim under the "fraudulent" prong of the UCL, a plaintiff must allege that the challenged practice is likely to deceive members of the public. Bardin v. Daimlerchrysler Corp.,136 Cal. App. 4th 1255, 1274 (2006). Plaintiffs fail to identify any statement made by Defendants that is likely to deceive the public. Thus, for the same reasons that Plaintiffs' CLRA fails, Plaintiffs fail to state a claim under the "fraudulent" prong of the UCL.

A violation of the "unlawful" prong of the UCL may be established by a variety of unlawful acts, including those practices prohibited by law, whether "civil or criminal, federal, state, [] municipal, statutory, regulatory, or court-made." Saunders v. Superior Court, 27 Cal. App. 4th 832, 838–39 (1994). Plaintiffs allege that the acts and practices of Defendants constitute unlawful business practices because they breach the implied warranty as well as the CLRA. Because Plaintiffs' claims under the "unlawful" prong of the UCL are predicated upon violations of the implied warranty of merchantability and the CLRA and Plaintiffs have not sufficiently pleaded those claims, Plaintiffs also fail to state a claim under the unlawful prong of the UCL.

The UCL also creates a cause of action for a business practice that is "unfair" even if not specifically proscribed by some other law. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003). To support liability under the "unfair" prong, the conduct must either "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim," South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999), or violate public policy as declared by "specific constitutional, statutory or regulatory provisions," Bardin, 136 Cal. App. 4th at 1268, 1272.

Plaintiffs allege that, despite Defendants' implied warranties, the Google Phone does not consistently sustain phone calls, does not consistently maintain connectivity to a 3G wireless network and does not operate at speeds promised. CAC ¶ 106. Plaintiffs also allege that

15

Case No.: 10-CV-01177-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

"[c]onsumers suffered substantial injury they could not reasonably have avoided other than by not purchasing the product, and there was no countervailing benefit to consumers from Defendants' unsupported claims and premature release of the Google Phone." Id. ¶ 109. As discussed above, Plaintiffs have not sufficiently alleged any actual statements made by Defendants regarding the consistency of the phone's 3G connectivity. Additionally, Plaintiffs have not alleged any facts pertaining to injury caused by the "premature release" of the Google Phone. To the extent Plaintiffs base this claim on their allegations that Defendants breached the implied warranty, they fail to state a claim for the same reasons their claim for breach of implied warranty fails—the Google Phone Terms of Sale disclaim the implied warranty and Plaintiffs lack privity with HTC. Additionally, Plaintiffs have not identified a specific constitutional, statutory or regulatory provision that Defendants violate. Thus, Plaintiffs fail to plead facts sufficient to state a claim under the "unfair" prong of the UCL.

For the above stated reasons, Defendants' motion to dismiss the UCL claim is GRANTED with leave to amend.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss is GRANTED WITH LEAVE TO AMEND. Any amended complaint shall be filed no later than thirty days from the date of this order.

Dated: August 2, 2012

_____
EDWARD J. DAVILA
United States District Judge